UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 3:19CR239 (AWT) |
| | : | |
| v. | : | |
| | : | |
| ONIEL WILKS | | February 22, 2021 |

MOTION FOR *CURCIO* HEARING
TO CONSIDER POTENTIAL CONFLICT OF INTEREST

The government moves for a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), and its progeny, so that the Court may consider a potential conflict of interest arising from the representation by defense counsel of a potential government witness in this case who is also a defendant in a related case before this Court (*United States v. Louie McDowell, et al.,* 3:18cr290 (AWT)). The United States is not seeking to disqualify counsel, so long as appropriate waivers can be obtained from both the defendant and the potential witness. Rather, the United States believes that sufficient grounds exist for the Court to conduct an inquiry on the record of both the defendant and the potential witness, with independent counsel available to advise defendant Wilks regarding the conflict. The witness, Louie McDowell, is currently represented by appointed counsel in his case before this Court and could be advised by his attorney regarding any potential conflict. To the extent they will both waive the potential conflict, the Court could elicit the waivers with a thorough canvas, on the record, of both the defendant and the potential witness. The government respectfully requests that the hearing be held and any question regarding the defendant's representation be resolved sooner rather than later, so that the parties may continue to discuss whether a resolution short of trial is possible. In connection with this motion, the government represents as follows:

I. <u>FACTUAL BACKGROUND</u>

On July 29, 2019, the government filed a sealed complaint, charging the defendant, Oniel Wilks, with various federal crimes. On August 5, 2019, Wilks was arrested in the Central District of California on the warrant related to that complaint and was eventually transported to this District to be presented. He was presented before Magistrate Judge Donna Martinez on September 19, 2019 and was ordered detained pre-trial. Attorney Richard Cramer represented the defendant at his presentment. A federal grand jury returned an indictment against Wilks on September 25, 2019, and he was arraigned before Magistrate Judge William Garfinkel on October 10, 2019. Attorney Aaron Romano entered his appearance on behalf of the defendant at the October 10th arraignment. He was retained by defendant Wilks.

The government provided discovery, and the defendant moved to continue jury selection to allow time to review discovery and discuss the evidence with the defendant. In early March 2020, the COVID-19 pandemic began in earnest, leading the Court to continue jury selection further. The defendant filed a motion for release from pre-trial detention, and the Court held a hearing on that motion. In both its written opposition, and in its oral presentation before the Court, the government outlined the defendant's extensive involvement in drug trafficking and money laundering operations, including actions in California and his involvement with Louie McDowell.

Louie McDowell had been arrested on November 6, 2018, several months before defendant Wilks, on a criminal complaint charging him with a narcotics conspiracy. He was indicted originally on November 14, 2018, and was then charged in a series of superseding indictments there/after. McDowell elected to plead guilty and executed a plea agreement before

Magistrate Judge Robert Richardson on December 16, 2019, and this Court accepted the magistrate's findings and entered his change of plea on December 19, 2019. Defendant McDowell was disclosed as a potential government witness in the case against his co-defendants. That case ultimately resolved by way of plea as to every defendant charged.

Attorney Bethany Phillips was appointed to represent McDowell on the day of his arrest in November of 2018 and has continued to represent him in his case before this Court to the present day.

In addition to the charges currently pending against defendant Wilks, the government in this District has been conducting an investigation into his drug trafficking and money laundering. Further, the defendant has been investigated for drug trafficking in a number jurisdictions – state and federal – in California. Indeed, he was arrested in California in April of 2019 after being found in possession of several kilograms of narcotics. Counsel for defendant Wilks and the government have been in discussion for some time about a potential global resolution of the defendant's cases short of trial. The government sent a proposed plea agreement to defense counsel on November 19, 2020; the agreement would resolve the charges pending currently here, as well as narcotics charges that are pending or would otherwise be brought in this District and in jurisdictions in California. The parties, including defendant Wilks, met most recently on February 17, 2021 to discuss the potential resolution. Thereafter, Attorney Romano told government counsel that he had previously had some contact with Louie McDowell. As government counsel understands it, early in the prosecution of McDowell, his family contacted Attorney Romano about the possibility of his representing him. He met with McDowell, reviewed the charging documents, and gave him a preliminary assessment of his potential

sentencing exposure. Attorney Romano did not end up representing McDowell, who has continued to be represented without interruption by Attorney Phillips.

As noted above, Louie McDowell was disclosed as a potential government witness in his case, 3:18cr290. The government has also informed counsel for defendant Wilks that McDowell is a potential witness in the case currently pending against him, with charges related to immigration violations, passport fraud, and aggravated identity theft, and in addition would be a potential witness as to drug and money laundering charges that will be brought by way of superseding indictment or an information.

II. APPLICABLE LAW

    A. General Principles

"In all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to an attorney includes both the right to counsel of one's own choosing, *Wheat v. United States*, 486 U.S. 153, 159 (1988) and the right to an attorney unimpaired by conflicts of interest. *Mickens v. Taylor*, 535 U.S. 162 (2002); *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003); *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002); *United States v. Curcio*, 680 F.2d 881, 885 (2d Cir. 1982); *see also United States v. Pizzonia*, 415 F. Supp. 2d 168, 175-76 (E.D.N.Y. 2006). "When a defendant seeks to be represented by an attorney with divided loyalties, these rights collide." *Pizzonia*, 415 F. Supp. 2d at 176.

"There are many situations in which a district court can determine that disqualification of counsel is necessary. The most typical is where the district court finds a potential or actual conflict in the chosen attorney's representation of the accused, *either in a multiple representation*

*situation . . . or because of counsel's prior representation of a witness . . . ."*). *United States v. Locasio*, 6 F.3d 924, 931 (2d Cir. 1993) (emphasis added). "A serious problem arises when 'there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to another current client, a former client, or a third person.'" *Pizzonia*, 415 F. Supp. 2d at 176 (quoting Restatement (Third) of the Law Governing Lawyers § 121 (2000)).

A conflict can either be a potential or actual one. An actual conflict arises when the attorney's and the defendant's interests "diverge with respect to a material factual or legal issue or a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones*, 381 F.3d at 119. A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." *Id*.

"Once a court is apprised of the possibility of a problem, it must determine whether the defendant can waive the right to a conflict-free attorney." *Pizzonia*, 415 F. Supp. 2d at 176 (citing *Perez*, 325 F.3d at 125; *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994); *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004)). "If counsel suffers from only a potential conflict or an insignificant actual conflict, [the] defendant may waive the right to conflict-free counsel." *Pizzonia*, 415 F. Supp. 2d at 176 (citing *Perez*, 325 F.3d at 125; *Levy*, 25 F.3d at 153).

The court, however, retains discretion to reject a waiver in order to protect the integrity of the judicial proceedings and the public's interest in ensuring a just verdict. *Perez*, 325 F.3d at 125; *United States v. Locasio*, 6 F.3d 924, 931 (2d Cir. 1993); *Pizzonia*, 415 F. Supp. 2d at 177. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all observe them."

*Wheat*, 486 U.S. at 160.  "This rule supports a 'legitimate wish' that the court's 'judgments remain intact on appeal.'" *Pizzonia*, 415 F. Supp. 2d at 177 (quoting *Wheat*, 486 U.S. at 161).

Because "the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict" in the pre-trial context, district courts have "substantial latitude" in refusing or accepting waivers. *Pizzonia*, 415 F. Supp. 2d at 177 (quoting *Wheat*, 486 U.S. at 162-63).

B.   Defense Counsel's Prior Representation of a Government Witness

"An attorney's former representation of a government witness on a substantially related matter can create the potential for serious conflict of interest warranting disqualification since the attorney may be limited in impeaching the former client or attacking his credibility on summation without becoming an unsworn witness." *Pizzonia*, 415 F. Supp. 2d at 177 (citing *Ciak v. United States*, 59 F.3d 296, 304-05 (2d Cir. 1995), *abrogated on other grounds by Mickens v. Taylor*, 535 U.S. 162 (2002); *United States v. Iorizzo*, 786 F.2d 52, 57 (2d Cir. 1986)). "Absent a waiver from the former client, the attorney may not inquire into privileged matters; this restriction may impair his ability to cross-examine the witness fully."  *Pizzonia*, 415 F. Supp. 2d at 177 (citing *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995); *Ciak*, 59 F.3d at 305; *United States v. James*, 708 F.2d 40, 45-46 (2d Cir. 1983)); *see also United States v. Lussier*, 71 F.3d 456 (2d Cir. 1995) (when a defense attorney is placed in a position where he may have to cross-examine a former client who is a witness against his current client, "a conflict of interest may exist; absent a waiver from the former client, the attorney cannot inquire into privileged matters.").

A matter is substantially related to an earlier matter if:

(1) the current matter involves the work the lawyer performed for the former client;

or

(2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known.

*Pizzonia*, 415 F. Supp. 2d at 177 (quoting Restatement (Third) of the Law Governing Lawyers § 132 (2000)).

An attorney is barred from making an argument or cross-examining a former client in a way that could affect the client adversely in a present proceeding. *Pizzonia*, 415 F. Supp. 2d at 177 (citing *United States v. Rahman*, 861 F. Supp. 266, 277 (S.D.N.Y. 1994) (disqualifying firm that had previously represented four co-defendants who might possibly testify at trial)).

"A serious conflict warranting disqualification may arise if the attorney is 'potentially in a position to use privileged information obtained during prior representation of the former client." *Pizzonia*, 415 F. Supp. 2d at 178 (quoting *United States v. Cunningham*, 672 F.2d 1064, 1072 (2d Cir. 1982)); *see also Belmontes v. Brown*, 414 F.3d 1094, 1118 (9th Cir. 2005) ("Conflicts of interest based on successive representation may arise if the current and former cases are substantially related, if the attorney reveals privileged communications of the former client, or if the attorney otherwise divides his loyalties."). "[T]he duties of loyalty and confidentiality remain in force [even] after the attorney-client relationship has ended." *Pizzonia*, 415 F. Supp. 2d at 181 (citing *Yannotti*, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004)).

The potential for "[c]ross examination of a former client will not always lead to disqualification," however. *Pizzonia*, 415 F. Supp. 2d at 178. "The specific tasks in which a lawyer was engaged might make the access to confidential information insignificant. The lawyer bears the burden of persuasion as to that issue and as to the absence of opportunity to acquire

confidential information. When such a burden has been met, the lawyer is not precluded from proceeding adversely to the former client." *Id.* (quoting Restatement (Third) of the Law Governing Lawyers § 132 cmt. h (2000)).

"The majority of cases that have found a conflict of interest arising from prior representation of a witness involve substantially related representations, where the danger of divided loyalties or revealing client confidences is at a maximum." *Id*. (citing *Malpiedi*, 62 F.3d at 467 (counsel represented a government witness during the grand jury proceedings in the same case); *Ciak*, 59 F.3d at 304 (in criminal prosecution, counsel sought to impeach a key government witness who was a former client in a forfeiture case stemming from the same prosecution); *James*, 708 F.2d at 43 (counsel's former representation of alleged head of narcotics organization was substantially related to representation of defendants where the defense's theory of entrapment was likely to elicit facts about defendants' relationship with the former client); *United States v. Moscony*, 927 F.2d 742, 747 (3d Cir. 1991) (counsel represented three government witnesses during the grand jury investigation in the same case); *U.S. v. Falzone*, 766 F.Supp. 1265, 1275 (W.D.N.Y. 1991) (counsel's former eleven-year-long representation of government witness was substantially related to representation of defendant where it was possible that the witness acquired information about defendants' loan-sharking enterprise during his own criminal activity). *But see United States, ex rel. Stewart, on Behalf of Tineo v. Kelly*, 870 F.2d 854, 857 (2d Cir. 1989) (trial court had discretion to reject defendant's waiver when defense counsel had previously represented key government witness in unrelated matter); *Falzone* at 1275 (expressing doubt that substantial relationship is required)).

"Limited representation of a government witness unrelated to representation of the

defendant is not likely to present a disabling conflict." *Pizzonia*, 415 F. Supp. 2d at 178 (citing *United States v. Paone*, 782 F.2d 386, 393 (2d Cir. 1986) (holding that defendant was not denied effective assistance of counsel because the district court refused to disqualify his counsel who, ten years prior to trial, aided a government witness in applying for bail on unrelated charges)).

"Since 'only the client and the attorney know what confidential communications occurred,' the view of the former client is an important factor in deciding whether disqualification is necessary." *Pizzonia*, 415 F. Supp. 2d at 179 (quoting *James*, 708 F.2d at 46); *see also Malpiedi*, 62 F.3d at 467-68 (counsel prohibited by lower court from cross-examining a government witness who believed counsel was her lawyer during grand jury proceeding, even if counsel believed he was never her lawyer).

Absent institutional interests in the integrity of judicial proceedings, and subject to the attorney-client privilege of the former client, a defendant may waive an attorney's conflict arising from prior representation of a trial witness. *Pizzonia*, 415 F. Supp. 2d at 179 (citing *Perez*, 325 F.3d at 127; *Lussier*, 71 F.3d at 462).

The Second Circuit has specifically addressed the question of defense counsel's *prior* representation of a government witness on several occasions. Those cases "support allowing waiver of the conflict that arises when an attorney must cross-examine a *former* client in order to effectively represent a current client." *United States v. Oberoi*, 331 F.3d 44, 50 (2d Cir. 2003) (emphasis added).

In *United States v. Lussier*, 71 F.3d 456 (2d Cir. 1995), the Second Circuit affirmed a criminal conviction despite a claim of actual conflict of interest based on defense counsel's prior representation of a government witness and current representation of the defendant, Lussier. The witness waived attorney-client privilege and acknowledged that he knew defense counsel could cross-examine him. *Id.* at 460; *see also Oberoi*, 331 F.3d at 50 (discussing *Lussier*). And, Lussier waived any conflict of interest. *Id.* The Second Circuit agreed with the district court's conclusion that "the primary area of conflict – [defense counsel's] potential inability to cross-examine [the witness] fully at trial – was significantly diminished by this waiver." *Id.* at 462. The Second Circuit held that "[b]ecause there existed only a potential for a non-severe conflict, a valid waiver could be made." *Id.* "In light of Lussier's sophistication, [the Second Circuit] found his in-court waiver sufficient despite the district court's failure to appoint independent counsel to advise him concerning his choices." *Oberoi*, 331 F. 3d at 50 (citing *Lussier*, 71 F.3d at 463). "Finally, because the former client's testimony did not hurt Lussier, [the Second Circuit] concluded 'that, even if the waiver were somehow flawed, Lussier suffered no prejudice from [defense counsel's] purportedly deficient cross-examination of [the former client].'" *Oberoi*, 331 F. 3d at 50 (citing *Lussier*, 71 F.3d at 464).

In *United States v. Leslie*, 103 F.3d 1093 (2d Cir. 1997), the Second Circuit "considered the conflict issue in the context of defense counsel's prior representation of a potential witness who ultimately did not testify." *Oberoi*, 331 F.3d at 50 (discussing *Leslie*). "The former client's new counsel represented to the district court that his client was willing to waive any conflict." *Oberoi*, 331 F.3d at 50 (citing *Leslie*, 103 F.3d at 1097). "However, the district court did not question the former client or make a *Curcio* inquiry of the current client." *Id.* The Second

10

Circuit affirmed the conviction, "finding that the district court conducted a sufficient inquiry and 'correctly concluded that [the former client's] waiver obviated the need for a *Curcio* hearing.'" *Oberoi*, 331 F.3d at 50 (citing *Leslie*, 103 F.3d at 1098). Alternatively, the Second Circuit "held that even if defense counsel had a conflict of interest, it was 'at best, only a potential conflict,' requiring Leslie to show prejudice, which he could not do because the former client never testified." *Oberoi*, 331 F.3d at 50 (citing *Leslie*, 103 F.3d at 1099).

In *United States v. Oberoi*, 331 F.3d 44 (2d Cir. 2003) the Second Circuit considered an interlocutory appeal of a district court's order denying a motion to withdraw by a defense attorney who "sincerely and reasonably believe[d] prior representation of a witness w[ould] prevent [him] from effectively representing [his] current client." *Oberoi*, 331 F.3d at 45. In *Oberoi*, the Federal Public Defender's Office for the Western District of New York moved to withdraw as counsel for the defendant when the Defender learned that "a long-term and current client of the office would testify" against the defendant. *Id.* at 45. The district court denied the motion after the witness consented to the use of his confidences and secrets by the Defender during cross-examination. The Defender appealed the district court's order on the grounds that the Defender believed that he risked violating the New York Code of Professional Responsibility despite the witness's consent to use of his confidences and secrets and that the Defender would continue to have "divided loyalties." *Id.* at 47. The Second Circuit held that "if forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility and possibly subject the attorney to sanctions, it will be an abuse of discretion not to grant the motion to withdraw." *Id.* at 47–48. After canvassing the relevant authorities on the issue of the potential ethical violation, the court concluded that the Defender probably could

**11**

have proceeded with the representation, particularly in view of the waiver of any confidences or secrets by the witness. *Id.* at 49. Nevertheless, the court concluded that the Defender's stricter interpretation of the ethical rules was not an unreasonable interpretation and observed that "an attorney who expresses ethical reservations about cross-examining a former client using his secrets and confidences, even with client consent, acts in the highest tradition of the profession." *Id.* at 51. The Second Circuit commented that "[t]he combined circumstances in this case – the Defender's sincere and not unreasonable belief that [he] could not adequately represent Oberoi given [his] continued duty of loyalty to [the former client/government witness]; the significant possibility that effective representation of Oberoi would require the Defender to cross-examine [the former client/government witness] in a way that might harm [the former client/government witness] . . . the lack of circumstances suggesting tactical abuse; and the district court's failure to question Oberoi concerning his willingness to waive the conflict – created a substantial danger that the proceedings in both cases would not 'appear fair to all who observe them.'" *Oberoi*, 331 F.3d at 52. Accordingly, the Second Circuit vacated the district court's denial of the Defender's motion to withdraw and remanded for appointment of new defense counsel.   *Id*.

In short, *Oberoi* stands for the proposition that a district court should not force a defense attorney to continue to represent a defendant, over the defense attorney's objection, and where the defense attorney reasonably believes that cross-examining a former client raises ethical and professional responsibility concerns. As a practical matter, *Oberoi* suggests that, in addition to a thorough canvas and waiver from both the former and current client, the Court should also canvas defense counsel to ensure that he does not have the concerns held by defense counsel in *Oberoi*.

      C.      The District Court's Duty of Inquiry and to
                Determine Whether Conflicts Are Waiveable

The Second Circuit has comprehensively set forth "two distinct obligations" of a trial court in conflict-of-interest situations. *See United States v. Rogers*, 209 F.3d 139, 143 (2d Cir. 2000); *Levy*, 25 F.3d at 156. First, when the Court "is sufficiently apprised of even the possibility of a conflict of interest," the court has an "inquiry" obligation: to "investigate the facts and details of the attorney's interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict." *Id.* at 153. Indeed, some courts have held that "'[w]hen a possible conflict has been entirely ignored, reversal is automatic.'" *Rogers*, 209 F.3d at 143-44 (quoting *Levy*, 25 F.3d at 153-54).[1]

Second, if it is ascertained that an actual or possible conflict exists, the court then has a "disqualification/waiver" obligation: to determine whether to require disqualification or whether the conflict may be validly waived by the defendant. *Levy*, 25 F.3d at 153. The Second Circuit "applies a firm preference for prophylactic inquiry, in which any conflict is identified and either eliminated or knowingly and voluntarily waived pre-trial." *Rogers*, 209 F.3d at 146; *see Schwarz*, 283 F.3d at 95.

---

[1] The Supreme Court's decision in *Mickens v. Taylor*, 535 U.S. 162 (2002) appears to overrule the automatic reversal mandated by *Rogers* and *Levy*. Rather, now, where a conflict is established, the defendant has the burden of demonstrating that the conflict actually affected the adequacy of his representation.

13

III.     THE NATURE AND WAIVEABILITY OF THE CONFLICT IN THIS CASE

Here, a potential conflict of interest may exist because Attorney Romano currently represents defendant Wilks, and he was previously consulted about representing Louie McDowell, a potential witness in the case against Wilks. To the government's understanding, Attorney Romano met with McDowell and reviewed the charging documents against him. He then provided his view of the sentencing exposure McDowell might face if convicted. Ultimately, McDowell elected not to retain Attorney Romano, and he continued to be represented by Attorney Bethany Phillips. When defendant Wilks was arrested some time later, he retained Attorney Romano to represent him. He is aware of his attorney's prior contact with McDowell and has no issue with Attorney Romano's continued representation of him.

To the extent he provided any personal information confidentially to Attorney Romano when they met or spoke thereafter, Louie McDowell has a right to have such information remain confidential. And Wilks has the right to a duty of undivided loyalty, including conflict-free counsel who is not going to be limited in cross-examining a witness who met with his attorney formerly about possible representation. *See, generally, Oberoi*, 331 F.3d 44; *see also Lussier*, 71 F.3d at 461-62 (possible area of conflict arose because counsel's "prior representation of Hill would prevent counsel from inquiring into privileged matters on cross examination of Hill."). To the extent McDowell divulged information to Attorney Romano that would be relevant to any cross-examination of him, and such information remains privileged, Attorney Romano's ability to cross examine McDowell could conceivably be limited.

**14**

Based on the information currently known to the government, and subject to understanding the circumstances further following any *Curcio* hearing, it would appear, under Second Circuit precedent, that the conflict presented here is a potential and waiveable one – provided that both Louie McDowell and Oniel Wilks waive any such issues pursuant to the guidance set forth in such cases as *Oberoi*, *Leslie* and *Lussier*. Absent a waiver from McDowell, Attorney Romano may not inquire into privileged matters, and may not be able to take positions adverse to McDowell, and these restrictions may impair his ability to cross-examine the potential witness fully, to the detriment of his client, defendant Wilks. *See, e.g., Pizzonia*, 415 F. Supp. 2d at 177 (citing *Malpiedi*, 62 F.3d at 469; *Ciak*, 59 F.3d at 305; *James*, 708 F.2d at 45-46)). The Second Circuit has expressly held, however, that a client will not be heard to complain "of a conflict of interest premised on his attorney's prior representation of a government witness if both the witness and the defendant waive[] any potential conflict." *Oberoi*, 331 F.3d at 50. The Second Circuit has also noted that "most authorities hold that an attorney may use the confidences of a former client to cross-examine that client if both the former and the current client consent." *Id.* at 49. The Second Circuit has further indicated that its cases "support allowing waiver of the conflict that arises when an attorney must cross-examine a former client in order to effectively represent a current client." *Id.* at 50.

In short, based on the government's present understanding of the facts and circumstances here, it appears that the conflict at issue may be validly waived – provided that both Wilks and McDowell knowingly and intelligently waive it.

IV.   <u>WAIVER PROCEDURES</u>

The government respectfully submits that, under the case law a *Curcio* hearing is

15

required at which the Court should first make a finding whether the conflict is waiveable. The court should then ascertain on the record whether the potential government witness, Louie McDowell, who has his own appointed lawyer who can advise him, can knowingly and intelligently waive the conflict of interest. *See, e.g., Lussier*, 71 F.3d at 460 (colloquy of former client/government witness regarding waiving the attorney-client privilege). The Court should then ascertain on the record whether the defendant – who should also be represented by separate and independent counsel for this limited purpose – can knowingly and intelligently waive the conflict of interest. *Levy*, 25 F.3d at 153; *see also Lussier*, 71 F.3d at 460 (canvas of defendant regarding waiving the potential conflict of interest).

A defendant's waiver is knowing and intelligent when a defendant shows that he understands the various risks and pitfalls, that he has the rational ability to make a decision on the basis of this information, and that he unequivocally and clearly expresses his choice to be represented by particular counsel notwithstanding the potential disadvantages. *See Williams v. Meachum*, 948 F.2d 863, 866 (2d Cir. 1991); *see also Curcio*, 680 F.2d at 888 ("If the defendant reveals that he is aware of and understands the various risks and pitfalls, and that he has the rational capacity to make a decision on the basis of this information, and if he states clearly and unequivocally that he nevertheless chooses to hazard those dangers, we would regard his waiver as knowing and intelligent.").

The Second Circuit has held that, "even a defendant's explicit, in-court waiver of his right to a non-conflicted lawyer [is] not valid and effective" if a court "fail[s] to explain adequately the ramifications of the attorney's conflicts" and to "provide the defendant with time to reflect on his decision" to continue with a conflicted counsel. *Levy*, 25 F.3d at 158.

The Court itself plays the "central role in apprising a defendant of his lawyer's conflicts in order to obtain an effective waiver." *Id.* at 158. It is not enough to rely solely on the parties' out-of-court certifications of waiver or the assurances of defense counsel that he or she has advised the client of possible conflicts. To the contrary, "[t]he first task of the trial court is to alert the defendant[] to the substance of the dangers of representation by an attorney having divided loyalties in as much detail as the court's experience and its knowledge of the case will permit." *Curcio*, 680 F.2d at 888. A trial court is thus "obligated at the very least to engage [the defendant] personally in a colloquy to determine if [the defendant is] willing to waive [the] right to a conflict-free lawyer." *Levy*, 25 F.3d at 155. In particular, the court should:

> (1) advise[ ] the defendant of his right to representation by an attorney who has no conflict of interest, (2) instruct[ ] the defendant as to the dangers arising from particular conflicts, (3) permit[ ] the defendant to confer with his chosen counsel, (4) encourage[ ] the defendant to seek advice from independent counsel, (5) allow[ ] a reasonable time for the defendant to make a decision, and (6) determine[ ], preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them. The ultimate goal of these procedures is to permit the court to determine whether the defendant's waiver of his right to conflict-free counsel is knowing and intelligent.

*Perez*, 325 F.3d at 119 (citing *Curcio*, 680 F.2d at 888-90); see *also Levy*, 25 F.3d at 153, n.4 (identifying similar procedures to be followed); *United States v. Rodriguez*, 968 F.2d 130, 138 (2d Cir. 1992) (same); *Lussier*, 71 F. 3d at 462 (the court's canvas should be done in "the preferred narrative form"); *Curcio*, 680 F.2d at 889 (noting that questions designed to elicit a narrative response are preferable to questions designed to elicit "yes" or "no" answers).

As noted above, cases such as *Oberoi* and *Lussier* also counsel in favor of providing those canvassed with the opportunity to discuss the potential conflict with independent counsel, and suggest that the appointment of independent counsel to advise them concerning their choices is advisable. *See Oberoi*, 331 F.3d at 50-51; *Lussier*, 71 F.3d at 463 ("We are somewhat troubled by the court's failure to inform Lussier that he was entitled to independent counsel to advise on waiver.").

Finally, given the interlocutory appeal and remand in *Oberoi* where both the former client and the current defendant waived, but defense counsel understandably remained concerned about the conflict, it appears advisable to also confirm on the record that, assuming his clients waive, defense counsel has no reservations as well.

V.	CONCLUSION

For the foregoing reasons, the Government respectfully requests the court conduct a hearing as soon as the Court's schedule permits to inquire and consider the potential conflict of interest in this case.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


/s/
KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct14959
United States Attorney's Office
1000 Lafayette Boulevard, 10th Floor
Bridgeport, Connecticut 06604
(203) 696-3000/(203) 579-5575 (fax)
Karen.Peck@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties, including defense counsel identified below, by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/
KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY